# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.  09-61399-CIV-ALTONAGA/Brown

**DALE HENRY**,

      Plaintiff,

vs.

**PEMBROKE PINES POLICE
DEPARTMENT**, *et al*.,

      Defendants.

_____/

## <u>ORDER</u>

**THIS CAUSE** came before the Court upon a Motion to Dismiss by Defendants, Assistant State Attorney Edward Walsh ("Walsh"), and Assistant State Attorney Joshua Roberts ("Roberts"), [D.E. 26], filed on October 23, 2009.  The Court has carefully reviewed the parties' written submissions and the applicable law.

## I.  BACKGROUND[1]

This case involves claims against the City of Pembroke Pines, Detective Kelly Brent ("Brent") of the Pembroke Pines Police Department, and Assistant State Attorneys Edward Walsh and Joshua Roberts under 42 U.S.C. § 1983.  Plaintiff, Dale Henry ("Dale" or  "Henry"), alleges the Defendants falsely and improperly arrested and detained him in jail and on house arrest.  (*See* Plaintiff's Amended Complaint ("*Am. Compl.*") [D.E. 19] at ¶ 1).

On October 22, 2006, Henry was arrested by the Miramar Police Department.  (*See id*. at ¶ 12).  Between eight and twelve officers  –  many of whom had shotguns drawn  –  entered the residence where Henry resides with his parents.  (*See id*.).  The officers handcuffed Henry inside the

---

[1] The allegations in the Complaint are taken as true.

Case No. 09-61399-CIV-ALTONAGA/Brown

home, took him outside and threw him on the lawn. (*See id*.). The neighbors watched as Henry was taken away in a police vehicle. (*See id*.).

Henry was arrested for the kidnaping and assault with a deadly weapon of Stephon Brown ("Brown") on February 27, 2006 in Pembroke Pines, Florida. (*See id*. at ¶ 13). Brown was able to immediately identify two of the three perpetrators who allegedly attacked him as Leroy Recardo Lamoth and Steve Salmon. (*See id*.). Warrants were issued for the two men shortly thereafter. (*See id*.). A Capias Warrant was issued for Henry approximately five months later, on July 31, 2006. (*See id*. at ¶ 14). The investigation and procurement of the warrant for Henry was undertaken by Brent. (*See id*. at ¶ 15). To obtain the warrant, Brent signed and certified a witness identification statement made by Brown on March 30, 2006, along with a probable cause affidavit executed on May 31, 2006. (*See id*.). The information was certified or attested to in good faith by Walsh on July 26, 2006. (*See id*.).

On February 27, 2006, Brown had provided a verbal statement to Brent in which he had described the third assailant, whom he believed was named "Dale," as "5 foot 7 inches tall, weighed about 150 pounds, black male, with dark skin, a big beard, about 36 years old, and a bush on his hair like a high afro with twists in his hair." (*Id*. at ¶ 17). Brown stated he had previously seen Dale playing basketball in the Tanglewood Park in Pembroke Pines. (*See id*.). Brown did not know where Dale lived, but believed he stayed on County Line Road in Dade County in an apartment with his girlfriend, but may have moved to Orlando. (*See id*.). Brown also told Brent he had known Dale for seven or eight years, since has was living in an apartment complex in Pembroke Pines. (*See id*.). Brown stated that the group who knew each other there are all Jamaican and speak with accents. (*See id*.). Brown believed that Dale was a mechanic and that he drives a motorcycle. (*See id*.).

Case No. 09-61399-CIV-ALTONAGA/Brown

On February 28, 2006, Salmon, one of the alleged assailants, made a statement to Brent in which he claimed that he was at Harbor Cove to buy drugs from Brown, who was always in trouble, and that he, Salmon, knew no one by the name of Dale. (*See id*. at ¶ 19). At the time these incidents occurred, both Brown and Salmon had criminal records. (*See id.* at 20-21). On March 30, 2006, Brown provided a voluntary written statement to identify the third perpetrator, who Brown believed to be Dale. (*See id*. at ¶ 18). In that statement, Brown stated he had known Dale for six years, and they had played basketball together. (*See id*.). Brown presented a photograph from his high school yearbook and picked out Dale Henry based on his name, although he misspelled the name as "Dail," and noted that Dale no longer wears glasses and now has twists in his hair. (*See id*.).

Henry is described as a black male; five foot, eleven inches tall; with close-cropped hair; clean shaven; wears glasses and has always worn glasses. (*See id*. at ¶ 22). Henry does not ride or own a motorcycle and has never played basketball with Brown. (*See id*.). Henry lived in Miramar with his parents and has no criminal record. (*See id*.). Henry has never been a mechanic, but works at a family-owned printing business. (*See id*.).

After his arrest, Henry hired an attorney, Gail Grossman ("Grossman"), for his criminal defense. (*See id*. at ¶ 23). On December 11, 2006, Grossman sent a letter to Roberts, who was involved in the investigation. (*See id*. at ¶¶ 24-25). The letter from Grossman contained information about the person Grossman believed committed the crime. (*See id*. at ¶ 25). This information was obtained by an investigator hired by Grossman. (*See id*.). The letter provided the name and location of a man named Daeval Johnson ("Johnson") who goes by the nickname "Dale." (*See id*.). Johnson formerly lived in Pembroke Pines, but had since moved to Orlando. (*See id*.). Johnson looks nothing like Henry, but they both attended the same high school. (*See id*.).

Case No. 09-61399-CIV-ALTONAGA/Brown

On January 29, 2007, Grossman and Roberts had a conversation in which Roberts told Grossman he had shown a photograph of Henry as an adult to Brown, and Brown confirmed that Henry was not the third perpetrator. (*See id*. at ¶ 26). On February 9, 2007, Grossman sent another letter to Roberts, demanding Henry's release, and another on March 5, 2007. (*See id*. at ¶¶ 27-28). Shortly thereafter, Henry was released and all charges against him were dropped. (*See id*. at ¶ 29). Prior to his release, Henry had been in jail from October 22, 2006 through November 6, 2006, and on house arrest wearing an electronic monitoring device from November 6, 2006 until March 8, 2007. (*See id*. at ¶ 30).

> Henry claims he committed no crime, yet he was
>
> physically accosted, thrown to the ground, handcuffed and arrested by a group of approximately eight to twelve police officers believed to be from the Miramar Police Department, acting upon what they believed to be a valid warrant. The officers were armed with shotguns, threatened force, and made the arrest out in the open in Plaintiff's quiet, family oriented neighborhood.

(*Id*. at ¶ 2).

Henry alleges Detective Brent withheld and omitted relevant facts to distort the truth and obtain a warrant for Henry's arrest under false pretenses. (*See id*. at ¶ 3). Henry further alleges Brent failed to properly investigate prior to asserting probable cause to obtain the warrant against Henry. (*See id*.). Henry maintains Brent's actions were a result of the policies and practices of the City of Pembroke Pines, Florida, which are deliberately indifferent to the rights of its citizens. (*See id*.). Henry alleges Walsh and Roberts failed to properly investigate the charges against Henry and recklessly disregarded relevant facts and evidence that would have disproved probable cause and proven Henry's innocence. (*See id*. at ¶ 4).

On August 27, 2009, Henry filed suit against numerous defendants in the Circuit Court of

Case No. 09-61399-CIV-ALTONAGA/Brown

th 17th Judicial Circuit in Broward County, Florida. The case was removed to federal court on September 4, 2009. (*See* [D.E. 1]). Henry filed an Amended Complaint [D.E. 19] on October 13, 2009, in which he brings the following claims: (1) Count I against Brent in her individual capacity, for violation of Henry's civil rights pursuant to 42 U.S.C. § 1983; (2) Count II against the City of Pembroke Pines, for violation of Henry's civil rights pursuant to 42 U.S.C. § 1983; (3) Count III against Walsh, for violation of Henry's civil rights pursuant to 42 U.S.C. § 1983; and (4) Count IV against Roberts, for violation of Henry's civil rights pursuant to 42 U.S.C. § 1983. Walsh and Roberts move for dismissal of Counts III and IV, respectively.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555)). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, No. 06-15851, 2009 WL 2431463, at *4 (11th Cir. Aug. 11, 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

Case No. 09-61399-CIV-ALTONAGA/Brown

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).  But pleadings that "are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal*, 2009 WL 2431463, at *3 ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for purposes of testing the sufficiency of the allegations.").  A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto."  *Brooks*, 116 F.3d at 1368.

## III.  ANALYSIS

Walsh and Roberts (collectively, "Defendants") move to dismiss Henry's Amended Complaint on three grounds: (1) Defendants enjoy prosecutorial immunity; (2) Defendants enjoy qualified immunity; and (3) Henry's Amended Complaint violates Rule 8, Fed. R. Civ. P., and fails to state a claim against them.

### A.    Prosecutorial Immunity

In *Imbler v. Pachtman*, the Supreme Court determined that prosecutors enjoyed absolute immunity for activities that are "intimately associated with the judicial phase of the criminal process."  424 U.S. 409, 430 (1976).  The Eleventh Circuit recently described the evolution and current boundaries of the doctrine of prosecutorial immunity as it exists today in *Hart v. Hodges*, No. 09-12257, 2009 WL 3821885 (11th Cir. Nov. 17, 2009).  The court explained:

> Subsequent Supreme Court decisions established outer bounds on what activities qualify for prosecutorial immunity and to which individuals it applies.  Prosecutorial

6

Case No. 09-61399-CIV-ALTONAGA/Brown

immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case. *Imbler*, 424 U.S. at 431, 96 S.Ct. at 995.   A prosecutor is immune for malicious prosecution.   *Malley v. Briggs*, 475 U.S. 335, 342-43, 106 S. Ct. 1092, 1097, 89 L. Ed. 2d 271 (1986).   Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence in support of a search warrant during a probable cause hearing.   *Burns v. Reed*, 500 U.S. 478, 490-92, 111 S. Ct. 1934, 1942, 114 L. Ed. 2d 547 (1991); *Kalina v. Fletcher*, 522 U.S. 118, 126, 118 S. Ct. 502, 507-08, 139 L. Ed. 2d 471 (1997); *see also Van de Kamp*, 129 S. Ct. at 861.   Prosecutors are also immune from damages claims alleging failure to institute a system of information-sharing among deputy district attorneys regarding confidential jailhouse informants.   *Van de Kamp*, 129 S. Ct. at 863-64 ("The management tasks at issue, insofar as they are relevant, concern how and when to make impeachment information available at trial. They are thereby directly   connected with the prosecutor's basic trial advocacy duties.").

*Id*. at * 5 (footnote call number omitted).   The court further noted:

Applying these principles, our circuit has emphasized that, "[a] prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate."   *Jones*, 174 F.3d at 1281. Such absolute immunity "extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State."   *Id*. (quotation marks omitted); *accord Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 (11th Cir.2002).

*Id*.

In this case, Henry seeks to hold Assistant State Attorneys Walsh and Roberts  liable for their actions in prosecuting the case against Henry.   While acknowledging the holding in *Imbler*, Henry takes the position that the immunity described in *Imbler* "has been severely limited over the last 35 years."   (Plaintiff's Response to Defendants' Motion to Dismiss ("*Plaintiff's Resp.*") [D.E. 29] at 4). Henry cites *Burns v. Reed*, 500 U.S. 478 (1991), for the proposition that prosecutorial immunity does not extend to activities engaged in by a prosecutor that are outside of the duties of a prosecutor, such as giving legal advice to the police during the investigation of a crime.   While Henry is correct that

Case No. 09-61399-CIV-ALTONAGA/Brown

*Burns* does so state, and the *Burns* court found the prosecutor did not enjoy immunity for that activity, the facts are simply not comparable to those alleged here.  In this case, the Amended Complaint states:

> EDWARD WALSH and JOSH ROBERTS, Assistant State Attorneys for the Broward County Office of State Attorney, failed to properly investigate and recklessly disregarded the relevant and pertinent facts and evidence which would disprove any probable cause and prove Plaintiff's innocence, thereby causing the improper and unlawful detention of Plaintiff.

(*Am. Compl.* at ¶ 4).  The Amended Complaint further states: "Defendant, Assistant State Attorney JOSH ROBERTS, was intimately involved in the investigation, collection and organization of the facts and evidence involved in this incident."  (*Id*. at ¶ 24).

The Amended Complaint does not allege Walsh and Roberts gave legal advice to the police; instead, it states Defendants were involved in the collection of information and failed to properly investigate certain leads.  These actions do not fall outside of protected prosecutorial activities as in *Burns*; instead, these actions fall within those described in *Hart*: "the prosecutor's actions in initiating a prosecution and presenting the State's case," and "acts undertaken in preparing for the initiation of judicial proceedings or for trial."

Henry also cites to *Mastroianni v. Bowers*, 160 F.3d 671 (11th Cir. 1998), and *Deveraux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), for the proposition that using false or misleading information to support an arrest or probable cause determination will strip a prosecutor of immunity.  However, both cases are inapposite.  *Mastroianni* was reversed on rehearing, with the court holding the prosecutors were entitled to prosecutorial immunity.  *Mastroianni v. Bowers*, 173 F.3d 1363 (11th Cir. 1999).  *Deveraux* involved the fabrication of evidence, and there are no allegations that either

8

Case No. 09-61399-CIV-ALTONAGA/Brown

Walsh or Roberts fabricated evidence. While Henry makes the conclusory statement that Walsh "[k]nowingly misstated and distorted the facts and evidence; and made assertions within the context of procuring a warrant and/or probable cause with reckless disregard" (*Am. Compl.* at ¶ 45), the factual allegations simply do not support this conclusory statement. The factual allegations in the Amended Complaint allege only that Defendants either disregarded or did not act quickly enough in relation to information that could have exculpated Henry. Those actions do not rise to the level of manufacturing evidence, and fall within a prosecutor's necessary actions in preparing for a case. As the court explained in *Hart*, "[a]bsolute immunity renders certain public officials completely immune from liability, even when their conduct is wrongful or malicious prosecution," reasoning that "the absolute immunity doctrine has evolved such that even wrongful or malicious acts by prosecutors are allowed to go unredressed in order to prevent a flood of claims against the remainder of prosecutors performing their duties properly." 2009 WL 3821885, at *8 (citing *Imbler*, 424 U.S. at 426).

In his Response to Defendants' Motion to Dismiss, Henry states, "the Amended Complaint <u>does not</u> seek to recover for the initiation of prosecution, or for the decision to charge the Plaintiff or release the Plaintiff. The allegations all deal with the collection and investigation of evidence, and the reckless omissions on the part of the State attorneys." (*Response* [D.E. 29] at 7). Henry's protestations to the contrary notwithstanding, prosecutorial immunity is broad, and encompasses "all actions intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. What Henry describes – the collection and investigation of evidence – clearly falls within that realm. Consequently, Walsh and Roberts are entitled to prosecutorial immunity, and the claims

Case No. 09-61399-CIV-ALTONAGA/Brown

against them are dismissed.

      **B.**      **Qualified Immunity and Failure to State a Claim**

Defendants also argue the claims against them should be dismissed on the basis of qualified immunity, and they argue that Henry fails to state a claim against them. Because Henry's claims against Walsh and Roberts are subject to dismissal based on prosecutorial immunity, these arguments need not be addressed.

## IV. CONCLUSION

In light of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss **[D.E. 26]** is **GRANTED**. Henry's claims against Walsh and Roberts, **Counts III and IV**, are **DISMISSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 28th day of December, 2009.

*Cecilia M. Altonaga*

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

10